Exhibit "A"

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

Case No: 00-07611 (04)

DIANE TEMPLETON,

      Plaintiff

v.

ANN FIERRO, f/k/a ANN THEIS,
an individual and, THE OMEGA CONSULTING
GROUP, INC., a Florida Corporation, and
OMEGA DATA SOLUTIONS, INC. a
Florida Corporation, and A. THEIS, INC. a
Florida Corporation, and OMEGACAL CONSULTING,
INC. a Florida Corporation,

      Defendants.

## AMENDED FINAL JUDGMENT

This matter came on for trial on October 13, 2008, after a long and tortured journey. The matter was originally tried and was the subject of an appeal (in fact this case has been the subject of multiple appeals). The opinion in the original appeal can be found at 857 So.2d 931. It offers a good synopsis of the facts pertinent to this case as well as a segue into this opinion. Subsequent to that final judgment, Ann Fierro filed a notice of intent to dissolve the corporation pursuant to F.S. 607.1436 (7). The trial court denied that motion which was the basis of that appeal. The appellate court found the trial court improperly denied Fierro the opportunity to dissolve the corporation and reversed and remanded the case for proceedings consistent with F.S. 607.1436(7).

As with the court in the first trial, this court finds that Diane Templeton was a 50% shareholder in Omega Consulting Group, Inc. at all times pertinent to this decision, and further that she was a director of Omega Consulting Group, Inc. Fierro argues that while the parties were at one time 50-50 shareholders, Fierro later contributed capital which changed that ratio. However, Fierro's tax returns, submitted under oath, never indicated that she lent money to the corporation as she claimed at trial, nor was she able

1

to produce any deposit slips to support this claim. Further still, there were no new shares issued to Fierro at the time of the alleged transfer. The court rejects this claim.

Likewise, Fierro claims that Templeton was neither an officer nor director. The court finds, however, that there is substantial competent evidence to find otherwise. As an example, Templeton was given business cards by Fierro to distribute to customers indicating that Templeton was a director. Further, throughout the early years of the corporation and, indeed, to some extent until the 'lockout' of Ms. Templeton, the two parties conferred and made joint management decisions.

The first trial dealt with valuation and in a sense this trial is simply a full circle where the court is again faced with valuation but under different circumstances. The difference is that the first trial followed a F.S. 607.1436 election by Fierro to purchase the shares of Templeton in response to Templeton's petition to dissolve the corporation. Then, like now, Fierro argued that the purchase should not be 50-50. Then like now, her argument was rejected. Once the final judgment was entered finding Templeton a 50-50 shareholder Fierro reversed course and elected alternatively to dissolve the corporation pursuant to F.S. 607.1436(7). Mrs. Fierro was successful on appeal in convincing the appellate court that she could make that election. The matter was remanded to permit dissolution. At the time of the dissolution the value of the corporation was zero. Thus, in this trial, Fierro argues that even if Templeton were a 50-50 shareholder, this court must value her shares at the time of the dissolution which was zero.

The first significant issue the court must address is at what point does the court value the Templeton shares. The underlying basis for this suit stems from actions by Fierro to lock out and assume control of Omega Consulting Group, Inc. This company had been formed by both as 50-50 shareholders. Unfortunately, as the company became more successful, Mrs. Fierro took the position that Templeton was not an equal shareholder and was not an officer or director. In fact, Fierro took the position that Templeton was an employee terminable at will, and she fired her. This locked out Templeton figuratively and literally from the corporation. All the while Fierro was transferring assets to offshore corporations she created in Nevis. This led to Templeton petitioning the court to dissolve the corporation in May of 2000. Fierro responded by seeking to purchase her shares instead under F.S. 607.1436. A lengthy and very

2

contentious discovery fight ensued to try to track the assets of Omega Consulting Group, Inc. through the various offshore accounts. In that trial Templeton was successful in convincing the trial court that she was a 50-50 shareholder. The court determined value and entered judgment. Fierro then claimed the right to alternatively dissolve the corporation instead of purchasing her shares. The trial court denied this and the appellate court sided with Fierro on this issue. At dissolution the value of the shares was zero.

What Templeton now asserts is that this is an equitable action and the court should be guided by F.S. 607.1436(4). This provision does not detail valuation on dissolution, but instead details valuation on purchase. It provides for two options for value. 1. the fair value of the petitioner's shares as of the day before the date on which the petition was filed, or 2. such other date as the court deems appropriate under the circumstances. Even though 607.1436(7) was invoked by Fierro, Templeton asks the court not to value as of the date of dissolution but 'at such other date as the court deems appropriate' under subsection 4 – specifically, on the date of her ouster. Ordinarily under subsection 7, value would be determined on the date of dissolution after liabilities and expenses had been paid. Fierro argues that there is no provision in dissolution for any alternate date or any alternate method of valuation. Templeton argues that this was an improper ouster and that following the ouster Fierro systematically took the assets of the company reducing its value to zero. To require valuation on the date of dissolution would reward Fierro for wrongful conduct and render the valuation meaningless. The parties have cited no Florida case directly on point to answer this question, although Plaintiff cites to a South Carolina decision for support in *Kreischer v. Kerrison Dry Goods*, 1999 U.S. App. LEXIS 1097, 29-30 (4th Cir. S.C. Jan. 26, 1999) which notes that in ouster situations, the date of valuation should be the date of ouster.

Preliminary to the courts analysis is the question of whether there was an improper ouster. The answer is yes. Central to Fierro's arguments to the contrary is the claim that Templeton was neither an officer nor director of the company but instead was simply an employee who could be terminated at will. The court has already rejected that claim and found that Templeton was indeed a director. Clearly, Mrs. Fierro's lockout of Ms. Templeton was an improper ouster.

The court is persuaded by the arguments of Plaintiff that valuation should be a date other than the date of dissolution. The reasons for this are apparent. At the time of the ouster, both sides agree that the company had value. Indeed, even Mrs. Fierro in the first trial opined that Ms. Templeton's share was worth at least $70,000. Thereafter, Mrs. Fierro, transferred assets and otherwise depleted the value of the corporation to a zero value at the time of dissolution. To determine value at the time of dissolution would place a judicial stamp of approval on an improper ouster and improper wholesale transfer of corporate assets. Plaintiff in this case has sought valuation at the time of her ouster on May 1, 2000. The court agrees with that date.

The next issue for consideration is what is the value of Ms. Templeton's shares. Valuation presents a thornier issue. At the first trial both parties presented experts on valuation. Not unexpectedly, their opinions differed dramatically depending on who they represented. Templeton's expert had her share at $1,789,000, while Fierro's expert had Templeton's share at $70,000. The trial court in the first trial determined Templeton's share value to be $1,281,554, but did not explain how she arrived at that figure.

In this trial neither party offered expert opinion evidence on value. The defendant chose to rely on value at the time of dissolution which was zero. The Plaintiff, instead of relying on an expert, relied on an agreement that both entered into valuing the company for insurance purposes. Both parties agreed that the value of the company was $5,000,000, and neither disputes that this figure was in place, at least for insurance purposes, at the time of the ouster. This would make Templeton's share at $2,500,000. This is almost twice the value found in the first trial. Plaintiff sought to have the court's findings of value at the first trial to be determined to be 'the law of the case'. The defense strenuously objected arguing that since the case was reversed and remanded, the issue of valuation began anew. The defense may now rue that choice, but having persuaded this court to its position, ought not take a contrary view later. This is significant because there was no other testimony by either side as to value at the time of ouster. That was it. And the value of the company for this purpose was agreed to by both sides. Accordingly, the court finds that the value of Ms. Templeton's shares was $2,500,000 at the time of ouster.

Additionally, Ms. Templeton asks for some $600,000 in additional damages as well as attorney's fees. The court declines to award attorney's fees and finds that

although Fierro breached her fiduciary duty to Templeton, this court agrees with the findings of the first trial court that such a breach did not rise to the level of the illegality required by F.S. 607.1430 and 607.1436(5) to award fees. The court is also of the view that $2,500,000 will adequately compensate Ms. Templeton for her damages and declines to award further damages. Accordingly, it is

Ordered and adjudged that Diane Templeton take from Ann Fierro the sum of $2,500,000. Prejudgment interest is due from the date the debt is due even where there is a bona fide dispute as to the amount due. *Berloni v. Della Casa*, 972 So.2d 1007 (Fla. 4th DCA 2008). The court has determined value as of the time of the improper ouster, and both sides agree that the company had value at that time. The court, however, finds that the date of dissolution is the date the amount was due for the purposes of calculating prejudgment interest since that is the date that would normally be used to determine when the debt is due. This date is September 17, 2002. Prejudgment interest from September 17, 2002, amounts to $1,324,657.02 nunc pro tunc from December 11, 2008, for a total of $3,824657.02 for which let execution issue. The court reserves jurisdiction to determine costs.

It is further ordered that Ann Fiero shall complete under oath Florida Rule of Civil Procedure Form 1.977 including all required attachments and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney, within 45 days from the date of the Amended Final Judgment, unless the final judgment is satisfied or post judgment discovery is stayed. The court retains jurisdiction to enforce this final judgment.

DONE AND ORDERED this 4th day of February 2009, nunc pro tunc from December 11, 2008, in Fort Lauderdale, Broward County, Florida. CARNEY

Feb 4, 2009

A TRUE COPY

_____
Robert B. Carney
Circuit Court Judge

Copies furnished by mail:
Andrew C. Barnard, Esq. and
Mark A. Dienstag, Esq. for the Plaintiff

Scott Behren, Esq. for the Defendant

5